Who wrote that statute? Was it written by Thomas or Bobby? I don't know It's very clear there Polartec Appeal 1305 Mr. Holloway, we're ready if you are. Good morning, welcome to the court. Please proceed. May it please the court. The district court's error here was the fundamental and technically incorrect determination to limit the entire 401 patent to requiring three separate yarns to create the inventive fabric. This error could have been avoided if the district court had recognized that the skilled artisan would understand the teachings of the 401 patent to describe how to make the inventive fabric using less than three yarns. For example, Southern Mills' expert provided extensive testimony that the specification teaches the skilled artisan that it can use a two-end fleece pattern to make the inventive fabric, including the specifically defined three-end knit fabric that appears in Claims 1 and 6. I don't understand the relationship you seem to be implying between whether enablement was established versus the correct construction of the critical claim language in light of everything in the rest of the specification. If I understand your question, our position is that there is written description and enablement for a two-yarn fabric that can be made in accordance with the specification. What you're saying is even if that's true, that doesn't require that your construction of the claim terms has to be the only construction that's possible, that's correct. That's correct. The purpose of claim construction is to give the terms that appear in the claim the meaning that they would understand to the skilled artisan in light of the teachings of the 401 patent. What happened here is we ended up with constructions of the terms that are up on appeal that limits Claims 1 and 6 and Claims 17 to requiring three separate yarns. Essentially, what the district court did was find a disavowal or disclaimer of claim scope, reading out other disclosed embodiments, and limiting the 401 patent to a preferred embodiment. But the intrinsic record does not possess any evidence of an expressed disavowal. What embodiment was excluded by the claim construction chosen by Judge Martin? The two things, the two-end fleece pattern that appears in Column 4 when it says other patterns can be used to make the three-end knit, as well as just the express wording of Claim 17 that only requires two yarns to create the inventive fabric. You'd be better off arguing just Claim 17, but it's up to you. I was going to start with Claim 17 because the claims are part of the specification by itself. If we just start with Claim 17, we see that it doesn't recite three separate yarn functions. It only recites two. It doesn't have the three-end language. It doesn't have the three-end language, but even the three-end language in Claims 1 and 6 doesn't mean three yarns. That's a hard one to argue because there's a lot of language outside the description of the preferred embodiment that suggests the use of three yarns. You've got a big problem with that. But there's nothing that's definitional. Going back to Claim 17, it recites a tie yarn and a nap yarn. There's nothing in the intrinsic record that requires a third yarn to be present to create Claim 17. What the district court's construction did was circuitously define all of the yarn terms so that they were dependent on one another with this visibility requirement. When you ended up with the district court's claim construction for tie yarns, it says it's not visible from the face side. She further defined face side to be made up of stitch yarns or face yarns. We end up having to have a third yarn in Claim 17, which isn't proper. A third yarn function is added by Claim 18, and this court's decisions in libel fly sham indicate that it's improper to take a dependent limitation from the dependent claim and move it into the independent claim. Coming back to your question about the three-end, there's a specific definition. Three-end means the yarns serve one of three different functions in the fabric. It doesn't say three separate yarns, a point that Polartec's expert agreed to. Where is this stated? In Column 3 of the specification, there's a definition. The term three-end, in quotes, means the yarns serve one of three different functions in the fabric. I'm sorry, it's Column 2. It doesn't say three separate yarns. In fact, that paragraph goes on and says the yarns employed may all be the same. The evidence at the Markman hearing was that the skilled artisan looks at that and understands, I can use one, two, or three yarns to perform the necessary functions. Claim 1 and 6 lay out the necessary functions. Stitch yarns, tie yarns, and nap yarns. We refer to these as yarn functions and not separate yarns because that's how the skilled artisan would understand them. That's all the evidence that was before the district court. There was no evidence before the district court to support Polartec's attorney arguments that the specification requires three separate yarns. Back to Judge Dyke's question, I agree with you that the majority of the specification describes preferred embodiment. When it's describing the preferred embodiment, it does so in reference to three yarns. How do we know that? There are references before the preferred embodiment is even addressed. The first time the words preferred embodiment appear in the detailed description is in Column 4 when they mention the reference to Figure 1. But the same language that they're using when they say, Figure 1 shows a preferred embodiment of the invention, the three-end knit structure. That same three-end knit structure is the beginning sentence of the detailed description. The entire detailed description is describing it in terms of what the inventors possessed, which was that they knitted it on a three-yarn machine. But they specifically say the preferred pattern shown in Figure 1 is a three-end fleece pattern. Other patterns can be used to make this structure, such as a two-end fleece pattern. All of the evidence below, including Polartec's counsel and Polartec's expert, acknowledging that that describes less than three yarns to make the inventive structure. Which suggests that the term three-end knit requires three yarns. Say that again? Which suggests that the term three-end requires three yarns. The term three-end is what's defined. We then have two separate dichotomies that the skilled artisan recognizes. We have structure and we have pattern. When it's describing three-end knit structure, it's talking about the fabric as a whole and the functions necessary to make up that fabric. When it's talking about pattern, we're talking about the individual stitch elements that go in to make up the entire fabric. So when we're talking about pattern, we're concerned with things like geometry and the number of yarns. We're not concerned with the function when we're talking about the pattern. So three-end fleece pattern and three-end knit structure are very different things. This is all the evidence that was presented below by Dr. Adner, Southern Mills' expert, that was not refuted. The district court here essentially just completely ignored what the skilled artisan would understand from the specification and just adopted the attorney arguments. If you go back to Claim 17, there is no requirement for three-end. So you have a claim that in addition to the specification recites only two yarn functions. If you go back to Claims 1 and 6, there is nothing in Claims 1 and 6 that says anything about having to use three separate yarns. Another point agreed to by Polartec's expert. In Claim 17, what do you think is contemplated as the yarn that is used to construct the face surface? Just as it would be in Claims 1 and 6, if you're talking about a two-yarn system, the yarn performs the functions of tying the nap yarn into the fabric and the yarn forming the face would be the same yarn. So that would be the tie yarn performing both of those functions. So you're saying that the face, what was referred to elsewhere in the patent as the face or stitch yarn, is not present in Claim 17 because the tie yarn performs the function of the face or stitch yarn that's referenced in Column 3? A separate face or stitch yarn is not present in Claim 17. Nor is it required by Claims 1 and 6. What happens is, that's why we talk about the yarns in terms of functions, as the skilled artisan would understand. You're going to insist on going down completely. Either we agree with you on all of them or you might as well lose, right? No, that's not what I'm saying at all. The reason I keep referencing Claims 1 and 6 is because there's not a single time in the patent or the claims where it says you have to use three separate yarns. Going back again to Claim 17, that's why we use the phrase capable of when we're describing three-end and the various yarn functions. The goal of that phrase is not to inject ambiguity. Southern Mills' constructions still require that those functions be present in the respective claims. In Claim 17, it has to have a tie function and it has to have a knot function. What it leaves open the possibility is that a single yarn could perform more than one function. What does end mean? The term end, both Southern Mills' expert and Polartec's expert acknowledge that if you were to ask a technical textile engineer what does a three-end or two-end, they're going to say they don't know. They need more information. They need more detail. That's what the 401 patent provides. Putting aside the number, whether it's 2 or 3 or 4 or 1 or 8 or whatever, what does the word end mean in this part? As Dr. Adner testified to at the Markman hearing, it would depend on whether you're talking about the fabric as a whole and what it's going to do or you're talking about the pattern that the fabric is made from. In the former category, you'd be referring to what the functions are going to be that go into the fabric. I don't understand how end can refer to function. It sounds like it's referring to structure. Structure is how they're describing things in terms of the function as opposed to pattern. The reason end can't mean yarns is because when these things are made in practice, they're not made with three yarns. They're made with 70 to 300 yarns. The machines spin these out on a lot more than three spindles. When they're talking about the pattern, the individual row and course, for example, if you're looking at figure 1 in the patent, if you're looking at just the top row of the yarns that follow that loop, each loop is a stitch. When you're talking about the pattern, you're talking about that individual repeat element. In that context, when you say end, the 401 patent is describing to the skilled artisan, I'm talking about the number of yarns I need. It goes on to provide more information in the specification about how in some embodiments, I'm going to need those to follow substantially parallel paths across the course and across the fabric to achieve one of the stated goals of the invention, and that's to have a smooth side that faces the wearer. Then I fleece the opposite side to create the thermal barrier. The term three ends, in this context, is defined by the patent. It means the yarns serve one of three different functions in the fabric. It doesn't say separate yarns again. The next part goes on to say the yarns can all be the same. Polartec argues that means it can be the same material, but that's not necessarily true because if it could be the same material, the skilled artisan would recognize I can do the functions. If I can do the functions with the less number of yarns, there would be motivation for me to do that. Moreover, when you get to the detailed description of the yarn types, all of the yarn types are the same over and over again. You get to select for the different yarn functions from the same world of yarns. Where the district court erred here was by ignoring all of this testimony that was unrebutted and at times agreed to by both Polartec's counsel and their expert. The result are convoluted constructions that ignore and limit the patent to the preferred embodiment. There is no intrinsic evidence that disclaims things other than the preferred embodiment. There's nothing that limits Claims 1.6 or 17 to exclude a two-in-fleece pattern. I would say that Claims 17 is the best evidence of that in the specification because it only describes two yarn functions. I'd reserve two minutes of rebuttal time and I'm almost there, so I'm just going to stop now and tell them. Thank you. May it please the Court, Your Honor. Michael Buenis, Chode Hall and Stewart on behalf of Polartec, the appellee in this case. Suppose we agree with you and we say, okay, the three-in-knit means three yarns. You win as to Claims 1.6. You've got a problem with Claims 17 because it doesn't have three-in-knit. There is a reference in the specification which seems to contemplate a two-yarn embodiment. The question is why doesn't Claims 17 allow a two-yarn embodiment to be encompassed within the line? Let's start right with Claims 17, Your Honor. First, I just want to make the record clear that we disagree that the specification contemplates a two-yarn embodiment. We think that the term, those few words that are used, a two-end pattern, doesn't describe an embodiment with fewer than three yarns. But putting that aside, let's... It's just unclaimed subject matter. Well, actually, the testimony on the record, and I want to get back to your direct point on 17, but the testimony on the record is that that language, a two-end pattern, reflects the configuration or the orientation of the stitch and the tie yarn within the three-yarn, excuse me, three-in-knit function. So that is to say it still requires three yarns. It's just an alternative way of configuring in the pattern that stitch and tie yarn. The district court did say that, right? I think the district court said that it didn't really know what two-end pattern means, but that it knew that the structure that's described overall in the definitional part of the pattern was a three-in-knit. Now, if I could go right to Claims 17 and tell you why Claims 17 includes three yarns, if that's okay with you, Your Honor? That would be good. Good. All right, now we've got to hold up two hands here with this Claims 17, but it's there. So we know that Claims 17 requires a tie yarn. It says expressly a tie yarn. And we know that Claims 17 requires a nap yarn. It says a nap yarn. And we know that Claims 17 also requires a face layer. So we have a tie yarn, a nap yarn, and a face layer. Now, we know from the patent that a face layer incorporates a face side, right? That's the plane, the side of the face that incorporates the structure of the face layer. And the patent also says that the only yarn of the three yarns that's described in the invention in this patent that's visible from the face side is the stitch or face yarn. So Claims 17 requires a tie yarn. We know that's there. Claims 17 requires a nap yarn. We know that that's there. It also requires a face layer, which has a face side. And we know from the patent that the only yarn of the three that's visible from the face side is the face yarn, three yarns. Now, the next question, of course, you'd ask is, well, why does Claim 18 describe or mention a face yarn? And isn't the implication that it's not present in the prior claim? That would be a good question. Well, every now and again, Your Honor. The reason why Claim 17 mentions a face yarn is not to describe the presence or lack of presence of the face yarn in Claim 17, but rather there's some characteristic about the face yarn that's further described in Claim 18. For example, if you look at Claim 18, it says, The fleece-width thermal barrier fabric of Claim 17, wherein said knitted face layer further includes a plurality of flame-resistant face yarns. Okay, so now those face yarns that are present by implication necessarily in Claim 17 are made of flame-resistant fibers. That's the first. But that was said of the tie yarns in Claim 17. The tie yarns, not the face yarns. No, there aren't any face yarns in 17. Well, we know there's. I mean, there's no reference to face yarns. There's no reference. The problem is that the reference to face yarns follows in 18 a similar pattern of description to the description of tie yarns. That's the second piece, Your Honor. The two things that are added by Claim 18 are that the face yarns that are present in 17 by implication and by definition are made of flame-resistant material and they follow substantially similar paths. So 18 doesn't add the presence of face yarns. They're already there in 17 because you have to have face yarns when you have a face layer, when you have a face side. Well, this, your entire argument, and then you're going to go ahead and talk about the parallel structure, right? Well, the other criteria or limitation that's added in 18 is the parallel structure, yes. But your entire argument then depends on the statement in the specification, I take it, that you can't see the tie yarns from the inside of the face layer. Well. I mean, is that fair? Let me say this. There are certain statements within the specification that are definitional. They absolutely apply not to embodiments that are mentioned, but they apply to the invention as a whole. What do you think is your best one of those? Give me, if you've got a couple, you say they're statements. What is the best statement that you can point to of something that's clearly categorical and isn't limited to an embodiment? There obviously are a lot of references to embodiments. There are several, Your Honor. I like a few, and I'll share them with you. If you look, for example, in one that I like quite a lot, and I'll start with, of course, the summary of the invention. And if you look, for example, in column two, beginning in line 35, the same place that my brother began, where he talked about the definition of what 3N means. And you read there the next several lines up all the way to line 44. If you read that in context, that tells you that the invention that's described here in general, the entire invention, not any embodiment, is a three-yarn structure with three separate yarns. Yeah, but it sounds more as though it's saying this is what 3N means. Well, you have to understand 3N in the context of a 3N knit. And so you should go to the next column, which is in column three, the beginning of the detailed description, and the very first line of that detailed description says the 3N knit structure. Remember, that's important. The 3N knit structure comprises the interaction of three yarns, each serving one of their own functions. The very first line of the detailed description tells you that. Now, you know from not only the claims, but also what's been previously said in the summary of the invention, that the functions they're describing are three. The trouble is that in column four, line 48, it says the knit pattern shown in figure one is called a 3N fleece pattern. Other patterns may be used, such as a 2N fleece or terry cloth, which seems to suggest that you can have an embodiment that doesn't use three separate yarns. I respectfully disagree. And this comes down to the distinction between a pattern and a structure. So we believe that the structure, which is talking about the entire invention here, is a 3N knit structure, which incorporates three separate yarns, a stitch yarn, a tie yarn, and a nap yarn. Stitch yarn is sometimes called a face yarn, but a stitch yarn, a tie yarn, and a nap yarn. With respect to the reference in column four, beginning in line 49, I believe, Judge Dyke, the knit pattern shown in figure one is called a 3N fleece pattern. Other patterns can be used. That reference, that language indicates that it's the orientation of, in that case, the stitch yarn and the tie yarn to create or to form the 3N knit structure. And that's the testimony in the record. That's the testimony of the expert witness for Polartec that said that he would understand that a 2N fleece pattern would be a certain configuration that differed from the preferred embodiment. So the reference to a 2N fleece pattern is not an embodiment to make a 3N knit structure using fewer than three yarns, but rather it's the configuration of that stitch yarn and tie yarn within the 3N knit structure. What would a 2N fleece pattern look like? Well, I'm not... Insofar as the record tells us. It would look different from the way that the stitch yarn and the tie yarn follow those paths in the formation of the column or whale that's shown in figure one. How so? Would the tie yarn then be visible from the face? No, it couldn't because by definition the tie yarn, the only yarn that's visible on the face is the stitch yarn. Well, but that depends on reading this language at the bottom of column three as referring to the invention as a whole instead of the preferred embodiment. If you read that as referring only to the preferred embodiment, there's nothing inherent about a 2N pattern where the tie yarn wouldn't be visible from the front. Well, I think that that's true, that you must credit certain language used in the specification that applies to the invention as a whole, and that is true, Your Honor. But the testimony below is clear that the 2N... One of the difficulties here, Your Honor, is that the only mention of 2 in this entire patent, the claims or the specification or anything, is this one, two, three words that say a 2N fleece. No one really knows. The patent doesn't teach what a 2N fleece pattern is. Expert testimony says that that reference to pattern versus structure is the description that you have three yarns in the structure, but they follow a different pattern or configuration. The patent is clear to set forth the distinction between structure and pattern, the structure being the number of yarns and what's achieved by the invention. I'm not sure if that's responsive to your question, but I think the important point is yes, we believe that certain language used within the patent is definitional and applies more broadly to the invention as a whole, not just to an individual embodiment. Now, in fact, one point that makes that clear, and I think that the district court did it nicely, is now one of the points that was made by Southern Mills was that there's language in the specification that says the yarns employed may all be the same, and they say that is evidence that you could use fewer than three yarns to make a 3N structure. In reading this over, I noted that in the claim construction order for the district court, the judge makes a nice point. She said if the yarns are all the same and there's only one yarn, how could somebody select the best yarn for each of the three functions? The patent specifically says you select the best yarn for the function that you're... If you have one yarn that's being used, i.e. fewer than three yarns, how is it possible to select the best yarn for the three different functions, stitch, tie, and net? Simply not possible. Anyway, to conclude, Your Honor, the Claim 17 requires three yarns, just like the other independent claims. It does so not by expressly requiring the presence of a face yarn, but you know that the face yarn is there simply because it requires a face layer. We know from the patent that a face layer has a yarn that's visible from the face side, and that yarn is the face yarn or stitch yarn, so it's there. Claim 18 is not adding a face yarn. It's adding other limitations to the face yarn that are already present in Claim 17, the limitations of it being flame-resistant, and the limitation that it follows substantially similar paths. For those reasons, Your Honor, we think it was proper that the lower court excluded or did not credit the extrinsic evidence and found the claims... construed the claims as they did. Thank you, Mr. Holloway. Quickly addressing some of the things that Mr. Bunas pointed out. First, I'm not quite sure what evidence he's talking about below when he's talking about the two-end fleece talking about the parallel paths of just two yarns. There are two places in the record, and they occur on the same page, A499 to A500, in which Mr. Bunas acknowledged below, and the quote he said is, make no mistake about it, and I'll say it a different way, the patent never teaches, save that one reference to a two-end fleece pattern, how to make the invention using fewer than three yarns. His own expert testified at his deposition, did not come to the Markman hearing, but testified at his deposition when I asked him, does a two-end fleece pattern teach less than three yarns? He agreed with me. We've got a problem there because it does teach less than three yarns. The reference to knitted face layer in the specification, I would say is properly informed by its appearance in the file history. When the knitted face layer limitation was being argued before the PTO, the language is identical as it appears in the claim, that a knitted face layer includes a plurality of flame-resistant tie yarns. It mentions no stitch yarn or face yarn or third yarn function. The thing I'd like to discuss last is... Well, includes, it's not suggesting that it consists of. It's not consisting essentially of. It's not even consisting entirely of. Right. So if it doesn't consist entirely of tie yarns, what else does it consist of? It could consist. Because this is not a closed-ended claim... A two-end structure because a two-end knit structure, a two-yarn structure, right, would have all tie yarn in the face. The knitted face layer, which comprises the face side, you would see the tie yarn. The tie yarn would be the yarn that also forms the face because the nap yarn is on the back. And that'd be all that you'd have is tie yarn. That would be the minimum for what you would need, yes, to meet the limitations of the claim. I want to talk about the visibility thing real quickly. Those are not definitional sentences. Just because they contain the word is does not make them definitional. This court's decision in Abbott v. Andrix held exactly as this court should. In that case, there were two factual reasons that they didn't limit it. First, the inventor there knew how to make a definition just as they did here. They used the term means and set it off with quotation marks. The second is nothing in the claims includes anything to do with the visibility limitation. It is simply describing the preferred embodiment. And so the visibility limitations, which is how a third yarn ends up in Claim 17, should not be read into the claims. Accordingly, Your Honor, for the reasons set forth in our brief, the constructions proffered by Southern Mills should be, the district court's decision should be vacated and it should be remanded with Southern Mills as constructions. Thank you. Thank you both. The appeal is submitted.